CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 10, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Ryan Lynch | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Kimberly Castano, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24-cv-00081 |
| | ) | |
| A and A Executive Transportation | ) | |
| Services, Inc. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Charles Howard, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs Ryan Lynch and Kimberly Castano were passengers on a chartered bus when an active shooting took place onboard. They brought this action against the bus driver, Charles Howard, and the company that allegedly owned and operated the bus, A and A Executive Transportation Services, Inc. ("A and A"), alleging several tort claims under Virginia law. This matter is before the court on Howard's motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 19).[1] For the reasons set forth below, Howard's motion to dismiss will be granted in part and denied in part.

---

[1] A and A also has moved to dismiss Plaintiffs' amended complaint, partly on the ground that it is not the corporate entity that owned and operated the bus involved in the shooting. (*See* Dkt. 22; Dkt. 23 at 11–12.) On March 5, 2025, the court

## I.    Background

### A. Factual History

The facts in this section are taken from Plaintiffs' amended complaint and are accepted as true when resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This lawsuit arises from a November 13, 2022 shooting on a bus chartered by the University of Virginia. (Am. Compl. ¶¶ 8, 22 (Dkt. 10).) That day, students in an African American Theatre class at the University of Virginia, including Lynch and Castano, traveled on the bus to Washington, D.C. for a class field trip. (*Id.* ¶ 8.) The bus allegedly was owned and/or operated by A and A. (*Id.* ¶ 11.) Howard, an A and A employee, was the bus driver. (*Id.* ¶ 12.)

As the group was returning to the University of Virginia around 10:00 p.m., an altercation broke out on the bus and gun shots were fired. (*Id.* ¶¶ 21–22, 27.) Lynch and Castano dropped to the floor and heard other students "yell that they could not get off of the bus and call out for someone to open the door as gun shots continued to ring out." (*Id.* ¶¶ 23–24.) Lynch saw that Howard, the driver, had exited the bus once the shooting began and closed the doors behind him. (*Id.* ¶ 25.) Lynch was near the front of the bus, and she could hear other students struggling to open the bus doors. (*Id.* ¶ 28.) The vehicle's internal lights were off during the shooting and visibility was poor. (*Id.* ¶¶ 27–28.) Lynch, Castano, and other students were able to escape the bus after another student succeeded in opening the

---

granted Plaintiffs' motion to conduct expedited discovery for the limited purpose of identifying the correct corporate entity. (Dkt. 40.) Plaintiffs have indicated they will seek leave to amend their complaint if the discovery confirms that a different entity owned and operated the bus in question. Because the ongoing discovery will resolve the question as to the correct entity, the court will defer action on A and A's motion to dismiss at this time.

doors.  (*Id.* ¶ 31.)  The shooter fled the scene, and the students found safe shelter until

emergency services arrived.  (*Id.* ¶ 32.)

Neither Lynch nor Castano heard Howard give any safety instructions to the student

passengers either before or during the field trip.  (*Id.* ¶ 13.)  The students were never advised

that firearms or other weapons were prohibited on the bus.  (*Id.*)  They also never received

information about the location of all bus exits or how to access them in the event of an

emergency.  (*Id.* ¶¶ 14–15, 30.)  None of the students received instructions on how to operate

the bus doors, (*id.* ¶ 26), and no A and A employee reviewed any other safety precautions or

procedures with them.  (*Id.* ¶ 16.)

Lynch and Castano allege that they suffered extreme emotional distress during the

shooting, which resulted in several symptoms, including post-traumatic stress disorder

("PTSD"), anxiety, depression, headaches, brain fog, nightmares, sleep impairments, panic

attacks, cold sweats, shortness of breath, nausea, dizziness, and heart palpitations.  (*Id.* ¶¶ 33–

39.)

## B. Procedural History

Plaintiffs filed this diversity action on November 12, 2024.[2]  (Compl. (Dkt. 1).)  Their

original complaint alleged claims against "A&A Limo, LLC" and the unnamed John Doe

driver of the bus.  (*See id.*)  On December 17, 2024, A&A Limo, LLC moved to dismiss the

---

[2] The amended complaint states that Lynch is a citizen of Pennsylvania and Castano is a citizen of New York.  (Am. Compl. ¶¶ 1–2.)  It alleges that A and A is a corporation with its principal and registered offices in Virginia and that Howard is a citizen of Virginia.  (*Id.* ¶¶ 3–4.)  Based on these allegations, the parties satisfy the diversity-of-citizenship requirements in 28 U.S.C. § 1332(a).  The amended complaint also asserts that the amount in controversy exceeds $75,000. (*Id.* ¶ 5.)

complaint under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(7) for failure to include a necessary party.  (Dkt. 4 at 1.)

On December 30, 2024, Plaintiffs amended their complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  (*See* Am. Compl.)  Their amended complaint replaced A&A Limo, LLC with A and A Executive Transportation Services, Inc. (doing business as A and A Limousine) and named Howard as the Defendant bus driver.  (*See id.*)  It alleges seven causes of action.  Counts I, II, and III allege claims for negligence, gross negligence, and willful and wanton negligence, respectively.  (*Id.* ¶¶ 40–76.)  Count IV alleges false imprisonment.  (*Id.* ¶¶ 77–83.)  Counts V and VI allege intentional infliction of emotional distress and negligent infliction of emotional distress.  (*Id.* ¶¶ 84–99.)  Finally, Count VII claims that A and A is vicariously liable for Howard's tortious conduct alleged in Counts I through VI (but does not assert a separate cause of action).  (*Id.* ¶¶ 100–07.)  Plaintiffs seek an unspecified amount of compensatory and punitive damages, as well as attorney's fees and costs.  (*Id.* at 15.)

On January 10, 2025, the court entered an order denying A&A Limo, LLC's motion to dismiss as moot in light of Plaintiffs' amended complaint.  (Dkt. 13.)  Plaintiffs served A and A and Howard with a summons and copy of the amended complaint on January 16, 2025. (Dkts. 16, 17, 18.)  A and A and Howard each filed an answer and a motion to dismiss under Rule 12(b)(6).  (Dkts. 19, 21, 22, 24.)  After the parties completed briefing on the motions to dismiss, the court heard argument on March 3, 2025.  (Dkt. 37.)  Following the hearing, the court directed the parties to submit supplemental briefing addressing the impact of two Supreme Court of Virginia decisions on Plaintiffs' negligence claims.  (*See* Dkts. 38, 41–43.)

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). But to avoid dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint, it generally is not a proper vehicle for raising affirmative defenses that a defendant has the burden of proving, "such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). However, the court may consider a statute-of-limitations defense in the context of a Rule 12(b)(6) motion "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (cleaned up).

### III.    Analysis

#### A.  Statute of Limitations

Howard first argues that Plaintiffs' claims against him are barred by the statute of limitations.  The Virginia statute of limitations applicable to Plaintiffs' claims provides that "every action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues."  Va. Code Ann. § 8.01-243(A).  Plaintiffs' causes of action accrued on November 13, 2022, the date of the shooting, so the limitations period expired on November 13, 2024.  Plaintiffs did not file their amended complaint naming Howard and A and A as defendants until December 30, 2024.  Thus, their amendment adding Howard and A and A is timely only if it relates back to the date of the original complaint, which was filed on November 12, 2024—just inside the two-year limitations period.

Federal Rule of Civil Procedure 15(c) governs whether amendments to pleadings, including those naming new parties, relate back to an original pleading.  It provides that an "amendment chang[ing] the party or the naming of the party against whom a claim is asserted" relates back if:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; [and]
>
> (C) . . . within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B)–(C). The plaintiff has the burden to establish that the requirements of Rule 15(c) are satisfied. *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir. 1989).

The Fourth Circuit has explained that "[Rule 15(c)'s] description of when such an amendment relates back to the original pleading focuses on the *notice to the new party* and the *effect on the new party* that the amendment will have." *Goodman*, 494 F.3d at 470 (emphasis in original). "These core requirements preserve for the new party the protections of a statute of limitations. They assure that the new party had adequate notice within the limitations period and was not prejudiced by being added to the litigation." *Id.* (emphasis omitted). The relation-back analysis "depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

Here, there is no dispute that the claims alleged against Howard in the amended complaint "arose out of the conduct, transaction, or occurrence" set out in the original complaint (the November 13, 2022 shooting). The only contested issue is whether Howard, within the Rule 4(m) service period, "received such notice of the action that [he would] not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). The court concludes that Plaintiffs' amendment naming Howard as a defendant meets Rule 15(c)(1)(C)'s conditions and thus relates back to the date of the original, timely complaint.

The Fourth Circuit has made clear that "the 'limitation period for purposes of analyzing whether [a] newly added defendant received notice and should have had knowledge of the action' as required for relation back under Rule 15(c) is not the statute of limitations for the underlying claim, but instead 'the Federal Rule of Civil Procedure 4(m) service period.'" *McGraw v. Gore*, 31 F.4th 844, 849 (4th Cir. 2022) (quoting *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010)). "Relation back is allowed, in other words, so long as the added defendant had notice within the 90 days—or any 'good cause' extension—allowed under Rule 4(m)." *Id.* This rule "flows directly from the text of Rule 15(c)(1)(C), which makes clear that the required 'notice' and knowledge must come 'within the [service] period provided by Rule 4(m).'" *Id.* (quoting Fed. R. Civ. P. 15(c)(1)(C)); *see also Krupski*, 560 U.S. at 548 (stating that Rule 15(c)(1)(C) "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period").

The question, then, is whether Howard received the necessary notice within the Rule 4(m) service period. He did. Plaintiffs filed their original complaint on November 12, 2024, filed their amended complaint naming Howard as a defendant on December 30, 2024, and served Howard with a summons and copy of the amended complaint on January 16, 2025. (Dkt. 17.) That service "clearly satisfies the [Rule 15(c)] notice requirement," *Robinson*, 602 F.3d at 609, and Howard received it well within 90 days of the date Plaintiffs filed their original complaint. Further, Howard has not been prejudiced in his ability to defend against Plaintiffs' claims. Fed. R. Civ. P. 15(c)(1)(C)(i). Approximately two months passed between the date Plaintiffs filed their original complaint and the date they served Howard. No discovery took place during that period, and the court issued a scheduling order setting discovery deadlines

only after Howard appeared, answered the amended complaint, and filed a motion to dismiss. Thus, Howard "would have been in the same position [he] is now" had he "been named as a defendant in the original complaint." *McGraw*, 31 F.4th at 850 (quoting *Robinson*, 602 F.3d at 609).

Howard argues that the amended complaint cannot relate back because Plaintiffs' initial lack of knowledge regarding his name is not "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).  Fourth Circuit precedent does not squarely address this issue. *See Williams v. Kincaid*, 45 F.4th 759, 775–76 (4th Cir. 2022) (declining to resolve this question because the defendants conceded that an amended complaint naming previously unnamed John Doe defendants could relate back); *McGraw*, 31 F.4th at 851 (declining to reach this question because the plaintiff's amended complaint substituted named parties for a different named party).  Some other circuits have held that naming a John Doe defendant does not qualify as a "mistake" that can support relation back.  *See Herrera v. Cleveland*, 8 F.4th 493, 497 (7th Cir. 2021); *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 471 (5th Cir. 2019); *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019); *but see Arthur v. Maersk, Inc.*, 434 F.3d 196, 211 (3d Cir. 2006) (holding that amendments substituting named parties for John Doe defendants can relate back when other requirements of Rule 15(c) are satisfied).

Based on an analysis of recent Fourth Circuit precedent, this court concludes that an amendment naming a previously unnamed John Doe defendant *can* satisfy Rule 15(c)(1)(C)'s conditions for relation back.  The Fourth Circuit has "rejected formalism in evaluating 'mistake' under Rule 15(c)." *Robinson*, 602 F.3d at 609–10 (citing *Goodman*, 494 F.3d at 470–71).  Rather than parsing the reasons a plaintiff did not initially name the correct party (as

some circuits do), the Fourth Circuit has clarified that "[t]he 'mistake' language is textually limited to describing *the notice* that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place." *Id.* at 610 (quoting *Goodman*, 494 F.3d at 470–71). The relation-back inquiry therefore turns on whether "that party has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it." *Goodman*, 494 F.3d at 471 (emphasis omitted).

In *Goodman*, the Fourth Circuit specifically addressed the substitution of named parties for John Doe defendants when clarifying that the Rule 15(c) analysis properly focuses on notice and prejudice to the named defendant. It explained that "[m]ost parties substituted for 'Doe' defendants would be protected against being added either because they were prejudiced or because they did not have proper notice." *Id.* In that scenario, "naming Doe defendants self-evidently is no 'mistake' such that the Doe substitute has received proper notice." *Id.* However, the Fourth Circuit stated that "the 'mistake' language is not the vehicle to address [ ] concerns" with Doe substitutions because "the notice and prejudice requirements of [Rule 15(c)(1)(C)] adequately police [against any] strategic joinder practice."[3] *Id.* at 473.

---

[3] In decisions that predated *Goodman*, the Fourth Circuit did hold that Rule 15(c) "is not satisfied when the claimed mistake consists of a lack of knowledge of the proper party to be sued." *Locklear v. Bergman & Beving AB*, 457 F.3d 363, 368 (4th Cir. 2006); *see also Bechtel*, 885 F.2d at 1201 (4th Cir. 1989). But in *Goodman*, the *en banc* Fourth Circuit departed from that rule by clarifying that the Rule 15(c)(1)(C) analysis focuses not on the type of mistake a plaintiff made, but on whether the new party received proper notice and would suffer prejudice. *See Goodman*, 494 F.3d at 471. The Fourth Circuit specifically cited an out-of-circuit decision holding that errors based on lack of knowledge of the proper party do not qualify as "mistakes," and then stated that the text of Rule 15(c) "does not support [that] parsing of the 'mistake' language." *Id.* at 470. The court also "reject[ed] any reading of [*Locklear* and *Bechtel*] that might be taken as conflicting" with its decision and noted that *Goodman* controlled to the extent it conflicted with those earlier decisions. *Id.* at 472; *see also Wilson v. City of Jacksonville, N.C.*, 682 F. Supp. 3d 481, 493 (E.D.N.C. 2023) (stating that the Fourth Circuit's decision in *Goodman* "limited its holding in *Locklear*").

This court agrees that "[b]y instructing courts to focus on notice and prejudice, *Goodman* rejected the notion that a John Doe substitution can never qualify as a mistake that permits relation back under Rule 15(c)." *Rumble v. 2nd Ave Value Stores*, 442 F. Supp. 3d 909, 917 (E.D. Va. 2020); *see also Wilson v. City of Jacksonville, N.C.*, 682 F. Supp. 3d 481, 494 (E.D.N.C. 2023) (holding that *Goodman* and subsequent Fourth Circuit decisions established that a "plaintiff may correct a lack of knowledge of the proper party as a mistake under Rule 15(c)"). When a plaintiff substitutes a named defendant for a John Doe defendant, the amendment may relate back if the named defendant receives notice within the Rule 4(m) period and will not be prejudiced by the amendment.

Howard argues that this district's unpublished decision in *Love v. Lloyd*, No. 5:20-cv-00070, 2023 WL 4850767 (W.D. Va. July 28, 2023), establishes that amendments substituting named parties for John Doe defendants can never satisfy Rule 15(c)(1)(C). As in this case, the plaintiff in *Love* initially alleged claims against John Doe defendants and later identified the defendants by name in a second amended complaint. *Id.* at *7–8. The court held that the amendments adding the named defendants did not satisfy the requirements for relation back. *Id.* But in *Love*, the plaintiff did not identify the defendant by name until more than *two years* after she initiated the action—well beyond the Rule 4(m) service deadline. *See id.* at *8; *see also Wilkins v. Montgomery*, 751 F.3d 214, 225 (4th Cir. 2014) (holding that an amendment naming new defendants failed to satisfy Rule 15(c)(1)(C) when the defendants did not receive notice of the lawsuit until at least four months after the Rule 4(m) deadline). Here, by contrast, Howard received service—and therefore notice—of Plaintiffs' complaint within the prescribed Rule 4(m) period. And for the reasons outlined above, this court concludes that

Fourth Circuit precedent does not categorically prohibit the relation back of amendments that replace John Doe parties with named ones.

Because Howard received notice of Plaintiffs' claims within the Rule 4(m) service period and will not be prejudiced in defending against them, the amendment naming Howard as a defendant satisfies Rule 15(c)(1)(C)'s requirements. The Rule "mandates relation back once [its] requirements are satisfied." *Krupski*, 560 U.S. at 553. Accordingly, Plaintiffs' claims against Howard relate back to the date of their original complaint and are not barred by the two-year statute of limitations.

### B. Analysis of Plaintiffs' Individual Claims

Howard next argues that Plaintiffs fail to state any plausible claim for relief. The amended complaint alleges causes of action for negligence, gross negligence, negligent infliction of emotional distress ("NIED"), willful and wanton negligence, false imprisonment, and intentional infliction of emotional distress ("IIED"). The claims all focus on Howard's conduct before and during the November 13, 2022 shooting.

The court concludes that Plaintiffs have not stated a claim for negligence, gross negligence, or NIED because they do not allege that they suffered any cognizable physical injury. But the court finds that Plaintiffs have alleged sufficient facts to state claims for wanton and willful negligence, false imprisonment, and IIED.

1. Negligence, gross negligence, and NIED claims (Counts I, II, and VI)

Plaintiffs' claims for negligence, gross negligence, and NIED require proof of overlapping elements. To plead a claim for negligence or NIED under Virginia law, a plaintiff must allege the existence of a legal duty, a violation of that duty, and resulting damages. *Burdette*

*v. Marks*, 421 S.E.2d 419, 420 (Va. 1992).  Whether a duty of care exists is "a pure question of law."  *Burns v. Johnson*, 458 S.E.2d 448, 451 (Va. 1995).  Whether the defendant has performed its duty is a question of fact.  *Commonwealth v. Peterson*, 749 S.E.2d 307, 311 (Va. 2013).  Gross negligence differs from ordinary negligence only in the degree of deviation from a defendant's duty of care.  The Supreme Court of Virginia has defined gross negligence as "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another."  *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987).

The court concludes that Howard owed Plaintiffs and other passengers on the bus a duty of care, and that Plaintiffs have sufficiently alleged that Howard violated that duty when he closed the bus doors during an active shooting.  The alleged facts support a reasonable inference of both negligence and gross negligence.  However, Plaintiffs' negligence, gross negligence, and NIED claims all fail as a matter of law because Plaintiffs do not allege that they suffered any cognizable physical injury as a result of Howard's breach of duty.

### i.  *Duty of care*

Under Virginia law, a person generally "has no duty to control the conduct of third persons in order to prevent physical harm to another."  *Burdette*, 421 S.E.2d at 420 (citing *Marshall v. Winston*, 389 S.E.2d 902, 904 (Va. 1990)).  That general rule applies with particular force "when the third person commits acts of assaultive criminal behavior because such acts cannot reasonably be foreseen."  *Id.*  However, Virginia courts have recognized certain "special relationships" between plaintiffs and defendants that "may give rise to a duty of care on the part of the defendant to warn and/or protect the plaintiff against the danger of harm from the reasonably foreseeable criminal acts committed by a third person."  *Thompson v. Skate America,*

- 13 -

*Inc.*, 540 S.E.2d 123, 127 (Va. 2001); *see also Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 433 (Va. 2006) (explaining that a special relationship must exist to hold a defendant liable for third-party harm).

One special relationship that arises as a matter of law is the relationship between a common carrier and its passengers. *Thompson*, 540 S.E.2d at 127. The Supreme Court of Virginia has explained that "[i]mposing an elevated duty of care upon the carrier is justified essentially because the passenger entrusts his safety to the carrier, who alone knows the condition of his vehicle and the dangers of the neighborhoods and environs through which the routes of travel may lie." *Taboada*, 626 S.E.2d at 434. "This imbalance of knowledge and control warrants imposition of a duty on a common carrier 'to protect its passengers against violence or disorderly conduct on the part of its own agents, or other passengers and strangers, when such violence or misconduct may be reasonably expected and prevented . . . .'" *Id.* (quoting *Va. Ry. & P. Co. v. McDemmick*, 86 S.E. 744, 747 (Va. 1915)). The Supreme Court has described this as an "elevated duty" that requires common carriers "'so far as human care and foresight can provide . . . to use the utmost care and diligence of very cautious persons.'" *Id.* (quoting *Norfolk & Western Ry. v. Birchfield*, 54 S.E. 879, 883 (Va. 1906)). Common carriers "will be held liable for the slightest negligence which human care, skill and foresight could have foreseen and guarded against." *Id.* (quoting *Norfolk & Western*, 54 S.E. at 883).

While a common carrier has an elevated duty of care, it is not "an absolute insurer of the . . . passenger's personal safety." *Id.* (citing *Norfolk & Western*, 54 S.E. at 883). A common carrier may be liable only if it "had notice of any acts which justified the expectation that a wrong would be committed." *Id.* (quoting *McDemmick*, 86 S.E. at 747).

- 14 -

Here, it is uncontested that A and A had a common-carrier-passenger relationship with Plaintiffs. (*See* Howard's Mem. in Supp. of Mot. to Dismiss at 11 (Dkt. 20) [hereinafter "Howard Mem."]; Am. Compl. ¶¶ 41–42.) But Howard argues that he had no duty to warn or protect Plaintiffs because the criminal acts of the shooter were not reasonably foreseeable. (Howard Mem. at 11.)

The court agrees that, as a matter of law, Howard could not have "reasonably expected or prevented" the shooting that took place on the bus and thus had no duty to warn Plaintiffs or other passengers. *Taboada*, 626 S.E.2d at 434. None of the alleged facts suggests that Howard or any other A and A employee knew or should have known that a passenger was carrying a firearm or planned to do so. The Supreme Court of Virginia's decision in *Connell v. Chesapeake & Ohio Railway*, 24 S.E. 467 (Va. 1896), is instructive. There, a railway was sued for negligence after a third party murdered a train passenger who was asleep on the train. *Id.* at 468. The Supreme Court affirmed the dismissal of the claim, concluding that the murder was not reasonably foreseeable to the railway. *Id.* at 470–71. It explained that "murder was so rare a crime that, even with its duty to exercise a high degree of care to protect its passengers, a common carrier should not be required to anticipate homicide in the absence of notice of the threatened danger." *Wright v. Webb*, 362 S.E. 2d 919, 921 (Va. 1987) (citing *Connell*, 24 S.E. at 469).

The shooting that occurred on A and A's bus is closely analogous to the onboard murder in *Connell*. Absent any specific allegations indicating that A and A should have known a passenger might be armed or start a violent altercation, A and A and Howard were not obligated to warn the passengers of safety measures to take in the event of a shooting, even

under a common carrier's elevated duty of care. While tragedies involving gun violence occur all too frequently in our communities, the court is unaware of any Virginia precedent suggesting that a generalized risk of gun violence is enough to make the November 13, 2022 shooting reasonably foreseeable to A and A and Howard. To the contrary, the Supreme Court has held that far more specific facts indicating a risk of gun violence were insufficient to establish that a shooting was reasonably foreseeable. *See Peterson*, 749 S.E.2d at 313 (holding that state officials could not reasonably have foreseen the April 16, 2007 mass shooting at Virginia Tech even though they knew a fatal shooting had occurred at a campus dormitory and the suspect remained at large).

However, the court concludes that Howard did owe Plaintiffs and other passengers a duty of care once the shooting began. Howard unquestionably had "notice of the threatened danger" when the shooter started firing at other passengers. *Wright*, 362 S.E.2d at 921. Under Virginia law, "common carriers [can] be liable for negligence in failing to intervene to protect a passenger from another passenger's assault *if* an agent of the carrier was close enough to intervene." *Id.* As the driver of the bus, Howard was close enough to take some action to protect the passengers from harm.

    *ii. Breach of duty*

Plaintiffs have plausibly alleged that Howard's actions during the shooting constituted a breach of his duty of care. They do not suggest that Howard should have put his own safety at risk to protect the passengers from the gunman, but they assert that he could have taken *some* action to prevent them from suffering harm. (*See* Am. Compl. ¶ 64.) Specifically, Plaintiffs allege that Howard "had an opportunity to open the door to enable students to flee

the gunman, but instead exited the vehicle then closed the door behind him, trapping the passengers with the gunman." (*Id.*)  At this stage, the court must accept those facts as true, and they support a reasonable inference that Howard breached the duty he owed to plaintiffs.

The alleged facts also support a reasonable inference that Howard acted with gross negligence, as alleged in Count II.  "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence." *Thomas v. Snow*, 174 S.E. 837, 839 (Va. 1934).  "It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." *Chapman v. City of Va. Beach*, 475 S.E.2d 798, 801 (Va. 1996) (internal quotation marks omitted).  Gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (citation omitted).  "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.* (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)).  Given that Howard and A and A had no duty to warn the passengers of the risk of a shooting, Plaintiffs' gross negligence claim based on the lack of safety precautions fails as a matter of law.  But Plaintiffs have sufficiently alleged that Howard acted with gross negligence when the shooting was ongoing.  Accepted as true, the alleged facts suggest plausibly that Howard failed to exercise even "slight diligence" or "scant care" for Plaintiffs when he closed the bus doors behind him as he fled the bus. *Chapman*, 475 S.E.2d at 801.

- 17 -

### iii. Physical injury

Plaintiffs do not allege that they suffered any direct physical injuries in connection with the November 13, 2022 shooting; fortunately, it appears they were able to escape the bus without any physical harm. Rather, they claim that Howard's negligence and gross negligence directly and proximately caused them to suffer severe emotional distress, which then manifested in physical forms of trauma. (*See* Am. Compl. ¶¶ 33–39, 65, 70, 97–99.) These allegations show that Plaintiffs seek to recover under a theory of NIED.[4]

> The Supreme Court of Virginia has described the elements of a NIED claim as follows:
>
> We adhere to the view that where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone. We hold, however, that where the claim is for emotional disturbance [a]nd physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.

*Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973). NIED claims are disfavored under Virginia law. *See Burnopp v. Carter Bank & Tr.*, No. 4:20-cv-52, 2020 WL 6875037, at *3 (W.D. Va. Nov. 23, 2020); *see also Earley v. Marion*, 540 F. Supp. 2d 680, 690 (W.D. Va. 2008) ("Virginia courts hold litigants to a rigorous standard for negligent infliction of emotional distress claims . . . .").

---

[4] While the amended complaint alleges NIED as a standalone cause of action, Plaintiffs' negligence and gross negligence claims do not allege a direct physical injury, so those claims also rest on a theory of NIED. Plaintiffs do not cite any Virginia precedent holding that a plaintiff can recover for gross negligence absent a physical injury. Because gross negligence does not rise to the level of willful and wanton conduct, *see Wilby v. Gostel*, 578 S.E.2d 796, 801 (Va. 2003), the Supreme Court's decision in *Hughes v. Moore* indicates that a plaintiff cannot recover for gross negligence based on emotional disturbance alone. *See Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973).

To support a NIED claim, the physical injury resulting from the plaintiff's emotional distress must involve more than the "typical symptoms of an emotional disturbance." *Myseros v. Sissler*, 387 S.E.2d 463, 466 (Va. 1990). Applying that standard, courts have rejected numerous symptoms as insufficient even though they might be described as "physical" in nature. *See id.* (PTSD, sweating, dizziness, nausea, difficulty in sleeping and breathing, chest pain, hypertension, loss of appetite and weight, and change in heart function, among other symptoms); *McClary v. Greyhound Lines, Inc.*, No. 7:17-CV-00098, 2017 WL 3725992, at *3 (W.D. Va. Aug. 29, 2017) (physical shaking, interrupted sleep, panic attacks, altered eating habits, and high blood pressure); *Burnopp v. Carter Bank & Trust*, No. 4:20-CV-00052, 2020 WL 6875037, at *1, 3 (W.D. Va. Nov. 23, 2020) (depression, fatigue, insomnia, increased blood pressure, shaking, tremors, and "stress and anxiety"); *but see Doe ex rel. Doe v. Baker*, 857 S.E.2d 573, 588–89 (Va. 2021) (holding that plaintiff stated claim for NIED by alleging "gastrointestinal issues" as a physical injury).

Plaintiffs' alleged symptoms closely mirror those courts have found inadequate to support liability under a NIED theory. The amended complaint alleges that Lynch, as a result of the emotional trauma, has suffered "post-traumatic stress disorder ('PTSD'), anxiety, depression, headaches, brain fog, sleep impairments, panic attacks, shortness of breath, nausea, dizziness, and heart palpitations." (Am. Compl. ¶ 33.) Castano alleges having experienced very similar symptoms, including "post-traumatic stress disorder ('PTSD'), anxiety, depression, headaches, sleep impairments and nightmares, panic attacks, shortness of breath, dizziness, nausea, cold sweats, and heart palpitations." (*Id.* ¶ 37.) These are precisely the types of impairments courts have classified as "typical symptoms of an emotional

disturbance," *Myseros*, 387 S.E.2d at 446, and they cannot support liability under a NIED theory.

Because Plaintiffs have not alleged that their emotional distress manifested in a cognizable physical injury, they fail to state a claim for NIED in Count VI. Their negligence and gross negligence claims in Counts I and II fail as a matter of law for the same reason. *See, e.g.*, *Elrod v. Bush Entm't Corp.*, Nos. 4:09-cv-164–166, 2010 WL 5620918, at *7 (E.D. Va. Dec. 14, 2010) (recommending dismissal of both a NIED claim and a negligence claim because the plaintiff "failed to allege either a contemporaneous physical injury, or a physical injury resulting from the mental disturbance caused by [the defendant's] negligence"), *report and recommendation adopted*, No. 4:09CV164, 2011 WL 166316 (E.D. Va. Jan. 19, 2011).

Accordingly, the court will grant Howard's motion to dismiss Counts I, II, and VI. Those counts will be dismissed without prejudice.

### 2. Willful and wanton conduct (Count III)

Count III alleges that Defendants are liable for "willful and wanton negligence." (Am. Compl. at 10.) Under Virginia law, this tort "differs in kind" from negligence and gross negligence, and "the use of the term 'negligence,' in defining the tort, is a misnomer." *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 327 (Va. 1990). Willful and wanton conduct "is defined as acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918–19 (Va. 2004) (internal quotation marks omitted)). The "hallmark" of this tort "is the defendant's consciousness of his act, his

awareness of the dangers or probable consequences, and the reckless decision to proceed notwithstanding that awareness." *Etherton v. Doe*, 597 S.E.2d 87, 90 (Va. 2004) (quoting *Infant C.*, 391 S.E.2d at 327). "[I]ll will is not a necessary element of willful and wanton negligence." *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999)).

Count III states a plausible claim for willful and wanton conduct. Plaintiffs allege that Howard acted with conscious disregard of their rights and with reckless disregard for the consequences of his actions when, "[u]pon hearing gunfire, [he] immediately abandoned the bus[,] closing the door and shutting his passengers in with the shooter behind him." (Am. Compl. ¶¶ 72, 75.) Viewing those facts in the light most favorable to Plaintiffs, a factfinder reasonably could infer that Howard knew closing the bus doors while an active shooting was occurring inside would prevent passengers from escaping the shooter and "probably would cause injury" to the passengers, including Plaintiffs. *Cowan*, 603 S.E.2d at 918–19. Factual development might well reveal that Howard's conduct does not meet the high standard for willful and wanton conduct. But at the motion-to-dismiss stage, the court must accept as true Plaintiffs' allegations that Howard took an affirmative act to close the passengers inside the bus, and those allegations are sufficient to state a claim.

Unlike Counts I, II, and VI, the lack of an alleged physical injury is not fatal to this claim. On more than one occasion, this district has recognized that a claim alleging willful and wanton conduct does not require proof of physical injury, and that a plaintiff may recover for emotional disturbance. *See Wilson v. Pamela Michelle O'Dell, PA-C*, No. 4:23-CV-00020, 2024 WL 4960019, at *4 (W.D. Va. Dec. 3, 2024) ("Under [Virginia] law, a sufficient allegation of willful and wanton conduct would allow for recovery for emotional harm and physical

manifestations thereof."); *C.T.L. v. People Inc. of S. Va.*, No. 1:05-CV-00004, 2006 WL 8456910, at *3 (W.D. Va. Oct. 27, 2005) ("Absent a contemporaneous impact to the plaintiff, a plaintiff must prove that the defendant's conduct was willful, wanton or vindictive and not merely negligent, to recover solely for emotional damages."); *see also Fairfax Hosp. by & Through INOVA Health Sys. Hosps. v. Curtis*, 492 S.E.2d 642, 644 (Va. 1997) ("As a general rule, in tort cases, absent accompanying physical harm or wanton and willful conduct, emotional distress damages are not recoverable." (citations omitted)).

Because Plaintiffs have stated a claim for willful and wanton conduct, the court will deny Howard's motion to dismiss Count III.

### 3. False imprisonment (Count IV)

False imprisonment is defined as "the restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011) (citing *Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 388 (Va. 1948)). "The tort of false imprisonment requires 'words or acts' to carry out the unlawful restraint." *Frazier v. Strobel*, 58 Va. Cir. 456, 457, 2002 WL 31431546, at *1 (Va. Cir. Ct. Apr. 19, 2002) (affirming demurrer as to false imprisonment claim because plaintiff alleged no facts suggesting that the defendant acted to prevent plaintiff from leaving a house while a third party attacked her). Thus, to state a claim for false imprisonment, a plaintiff must allege "that her liberty was restrained, either by words or acts that she would fear to disregard, and that there was no sufficient legal excuse to justify the restraint." *Dill v. Kroger Ltd. P'ship I*, 860 S.E.2d 372, 380–81 (Va. 2021).

A false imprisonment claim does not require proof of malice, ill will, or wrongful intentions, and "neither the good faith of a defendant nor that of his employee will defeat a

plaintiff's right to recover." *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966). "[F]alse imprisonment can be committed by negligent as well as by intentional conduct." *Moronese v. Scott*, 70 Va. Cir. 47, 2005 WL 4827426, at *1 (Va. Cir. Ct. Sept. 20, 2005) (citation omitted). And while false imprisonment claims often arise from allegedly unlawful arrests, "[i]t is not essential that a citizen be confined in jail or placed in the custody of an officer." *Gowdy*, 147 S.E.2d at 713.

Plaintiffs allege sufficient facts in support of each element of false imprisonment. They assert that Howard, without legal justification, "restrained Plaintiffs' physical liberty when he exited the vehicle and closed the door behind him without providing Plaintiffs with any instruction on how to open the bus doors [or locate other exits], effectively imprisoning them on the bus" during the shooting. (Am. Compl. ¶¶ 78–79, 82.) Howard argues that there are no facts suggesting he prevented Plaintiffs from exiting the door of the bus, (Howard Mem. at 19), but he overlooks the repeated allegations that he effectively trapped the passengers on the bus by closing the doors behind him. (*Id.* ¶¶ 25, 29, 78.) Those alleged facts, accepted as true, support a reasonable inference that Howard at least negligently committed "acts" that "carr[ied] out the unlawful restraint." *Frazier*, 2002 WL 31431546, at *1. Accordingly, the court will deny Howard's motion to dismiss Count IV.

4. Intentional infliction of emotional distress ("IIED") (Count V)

Count V alleges a claim for IIED. This cause of action has four elements: (1) "the wrongdoer's conduct was intentional or reckless"; (2) "the conduct was outrageous or intolerable"; (3) "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) "the resulting emotional distress was severe." *Almy v.*

*Grisham*, 639 S.E.2d 182, 186 (Va. 2007) (citing *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)). The Supreme Court has explained that IIED claims are "not favored" under Virginia law "[b]ecause of problems inherent in proving a tort alleging injury to the mind or emotions in the absence of accompanying physical injury." *Id.* at 187 (citation omitted).

The second element of an IIED claim is satisfied "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (quoting *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)). IIED claims often involve verbal harassment, and this element "is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Ruth v. Fletcher*, 377 S.E.2d 412, 413 (Va. 1989) (internal quotation marks omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Harris*, 624 S.E.2d at 33 (quoting *Womack*, 210 S.E.2d at 148).

In moving to dismiss this claim, Howard first argues that the alleged facts do not show that he intended to cause any harm. (Howard's Reply in Supp. of Mot. to Dismiss at 15 (Dkt. 33) [hereinafter "Howard Reply"].) But reckless conduct also can satisfy the first element of an IIED claim. *See Almy*, 639 S.E.2d at 186. For the reasons discussed in relation to Plaintiffs' claim alleging willful and wanton conduct, the alleged facts support a reasonable inference that Howard acted recklessly—that is, with a conscious disregard for the risks created by his actions—when he closed the bus doors behind him while an active shooting was occurring inside.

- 24 -

Howard also argues that Plaintiffs have not alleged the type of "outrageous or intolerable" conduct necessary to satisfy the second element of an IIED claim. (Howard Mem. at 18.) Here, too, Howard does not grapple with the allegations that he closed the bus doors behind him when he escaped the vehicle, trapping Plaintiffs and other passengers onboard with an active gunman. Viewing those facts in the light most favorable to Plaintiffs, reasonable minds could differ on whether Howard's conduct was "so outrageous as to exceed the bounds of decent society." *Baird v. Rose*, 192 F.3d 462, 473 (4th Cir. 1999); *see Womack*, 210 S.E.2d at 148. While further fact development might establish that Howard's conduct did not rise to that level, the court holds that Plaintiffs have sufficiently pled this element of an IIED claim.

Because Plaintiffs have alleged sufficient facts to support each of the contested elements of their IIED claim, the court will deny Howard's motion to dismiss Count V.

5. <u>Damages</u>

Finally, Howard lodges two challenges to Plaintiffs' alleged damages. He first argues that Plaintiffs have not pled facts that would support an award of punitive damages. This district has held that a request for "punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6)." *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014)) (citation omitted). Even if it were, the amended complaint alleges sufficient facts to support a punitive damages award. Under Virginia law, punitive damages are available only for willful and wanton conduct—negligence or even gross negligence is insufficient. *See, e.g.*, *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003). Plaintiffs state a claim for willful and wanton conduct in Count III, and they may be entitled to punitive damages if they prevail on that claim.

Howard also argues that the amended complaint fails to comply with Federal Rule of Civil Procedure 8 because its prayer for relief does not allege any dollar figure for compensatory or punitive damages. (Howard Reply at 17.) This argument, too, is unpersuasive. "[A] complaint need not plead damages with specificity to survive a Rule 12(b)(6) motion to dismiss." *DCG&T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 588 (E.D. Va. 2014) (citation omitted); *see also Charles*, 21 F. Supp. 3d at 631 ("Because a demand for relief is not part of a plaintiff's statement of the claim, the nature of the relief sought is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted.") (cleaned up). The amended complaint alleges that Plaintiffs are entitled to relief for their surviving claims in the form of compensatory and punitive damages. That is enough to satisfy Rule 8's pleading requirements. Howard does not cite any authority that supports a contrary conclusion.

## IV.    Conclusion

For the reasons outlined above, Howard's motion to dismiss (Dkt. 19) will be **GRANTED** in part and **DENIED** in part. The motion will be **GRANTED** as to Counts I, II, and VI, and those claims against Howard will be dismissed without prejudice. The motion will be **DENIED** as to Counts III, IV, and V.

An appropriate Order will accompany this Memorandum Opinion.

**ENTERED** this <u>10th</u> day of April, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE