IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
*Charlottesville Division*

| | |
|---|---|
| RYAN LYNCH and<br>KIMBERLY CASTANO,<br><br>　　　　Plaintiffs<br>　v.<br><br>A AND A LIMOUSINE SERVICE, LLC<br><br>and<br><br>CHARLES HOWARD<br><br>　　　　Defendants. | Civil No. 3:24-cv-00081 |

## SECOND AMENDED COMPLAINT

Plaintiffs, Ryan Lynch ("Ms. Lynch") and Kimberly Castano ("Ms. Castano") (collectively "Plaintiffs") through undersigned counsel, bring this action against Defendants, A and A Limousine Service, LLC, ("A and A"), and Charles Howard ("driver") (collectively "Defendants") as follows:

### Parties

1. Plaintiff Ryan Lynch is a natural person and resident and domiciliary of Pennsylvania.

2. Plaintiff Kimberly Castano is a natural person and resident and domiciliary of New York.

3. Defendant A and A, a common carrier, is a corporation with its principal office at 677 Berkmar Court, Charlottesville, Virginia, 22901, and its registered office at 200 Garrett St., Ste. C, Charlottesville, Virginia, 22902.

4.	Charles Howard, a natural person and resident of Virginia, was an employee, agent, or representative of A and A on November 13, 2022, for whom A and A is vicariously liable.

## Jurisdiction and Venue

5.	This Court has jurisdiction over the subject matter of this action under 28 U.S. Code § 1332 because the matter is between citizens of different states and the amount in controversy exceeds $75,000.

6.	This Court may exercise personal jurisdiction over the Defendants A and A and Charles Howard, for whom A and A is vicariously liable, because these Defendants transacted business in the Commonwealth of Virginia and caused tortious injury by act and/or omission in the Commonwealth of Virginia.

7.	Venue is proper in this Court pursuant to 28 U.S. Code § 1391 because the Defendants reside in Charlottesville, Virginia, and a substantial part of the events and omissions giving rise to Plaintiffs claims occurred in Charlottesville, Virginia.

## Factual Allegations

8.	On November 13, 2022, Ms. Lynch and Ms. Castano boarded a limousine bus on the University of Virginia campus to attend a class field trip with their African American Theatre class.

9.	Ms. Lynch was a 19-year-old pre-med student at the University of Virginia, hoping to someday become a physician.

10.	Ms. Castano was a 21-year-old college student at the University of Virginia studying global development, hoping to someday become an attorney.

11.	The bus they boarded that day was owned and/or operated by A and A and was hired by the University of Virginia to transport students to D.C. to see "The Ballad of Emmet Till" in the District of Columbia.

12. The driver of that A and A bus was Charles Howard, who at all times was acting within the scope of his employment with A and A.

13. Neither Ms. Lynch nor Ms. Castano heard the driver give any safety instructions to the passengers. At no point prior to boarding the A and A bus or during the trip did the driver or any other A and A employee, agent or representative advise the students that weapons and/or guns were prohibited on the bus.

14. At no point prior to boarding the A and A bus or during the trip did the driver or any other A and A employee, agent or representative advise the students of the location of all of the exits on the bus, in the event of an emergency.

15. At no point prior to boarding the A and A bus or during the trip did the driver or any other A and A employee, agent or representative advise the students of how to open the exits on the bus, in the event of an emergency.

16. At no point prior to boarding the A and A bus or during the trip did the driver or any other A and A employee, agent or representative review any safety precautions and/or procedures with the students.

17. The driver had ample time and opportunity to give the passengers basic safety instructions between the time the students boarded the A and A bus on campus and arrived in D.C. approximately three hours later.

18. After the students enjoyed an evening of dinner and theatre in D.C., they boarded the A and A bus to return to the University of Virginia campus.

19. Ms. Lynch was sitting approximately five rows from the front of the A and A bus, where the driver was located.

20. Ms. Castano was sitting near the rear of the A and A bus.

21. Just prior to arriving at their destination on campus, an altercation broke-out around the mid-section of the bus and Ms. Castano observed two male passengers tussling in the aisle.

22. Moments later, gun shots were fired as the bus came to a stop.

23. Ms. Lynch and Ms. Castano dropped to the floor as students began shouting and gun smoke began to fill the bus.

24. Ms. Lynch and Ms. Castano heard students yell that they could not get off of the bus and call out for someone to open the door as gun shots continued to ring out.

25. Ms. Lynch looked up to find the bus driver had abandoned the vehicle, closing the bus doors behind him.

26. None of the students had been instructed on how to operate the bus doors.

27. It was after 10 PM at night, there were no lights on inside the bus and visibility was poor. The only light filtering through the tinted bus windows was from a streetlamp outside on campus.

28. Ms. Lynch, who was located near the front of the bus, could hear fellow students struggling to find and operate the mechanism to open the bus door. The driver did not turn on any of the vehicle's internal lights before exiting the bus and closing the door behind him.

29. A and A's driver had effectively trapped the students on the bus in the dark while the shooter continued to open fire.

30. Ms. Lynch and Ms. Castano were never made aware of any exit other than the door they used to board the bus, which neither they, nor the other students had been told how to open. Believing that they could not escape through the one known exit, and unable to identify any alternative exit on the dark bus, Ms. Lynch and Ms. Castano endured extreme emotional distress and terror, believing they had no means to escape the shooter and, as a result, would inevitably be shot.

31. The students were only able to escape the bus when one of the students, on information and belief, Eli McLaughlin, was able to open the A and A bus door.

32. Once the door was open, the passengers, including the shooter, fled and the students were able to seek safe shelter until emergency services arrived.

33. As a result of the severe emotional disturbance and shock caused by the driver's conduct trapping Ms. Lynch in the dark bus, in an imminently dangerous and life-threatening situation, Ms. Lynch sustained severe emotional trauma and resulting physical injury, including post-traumatic stress disorder ("PTSD"), anxiety, depression, headaches, brain fog, sleep impairments, panic attacks, shortness of breath, nausea, dizziness, and heart palpitations. Ms. Lynch has continued to suffer from these mental and physical impairments since being trapped on the A and A bus, and they have severely impacted her life and will continue to do so for the foreseeable future.

34. As a result of the severe emotional disturbance and shock caused by the driver's conduct trapping Ms. Lynch in the dark bus, unable to escape an imminently dangerous and life-threatening situation, Ms. Lynch has to take medication to alleviate the emotional and physical symptoms of the injuries she sustained on November 13, 2022, and has to obtain regular treatment from a health care professional and will need treatment for the foreseeable future.

35. As a result of the severe PTSD, anxiety, headaches and panic attacks Ms. Lynch sustained from being trapped on a dark bus with an active shooter, she now has anxiety when she sees blood and suffers from brain fog, which will impact her ability to succeed at her chosen profession of medicine.

36. Since November 13, 2022, Ms. Lynch has had a fear of buses and public spaces over which she has no control. She can no longer use public transportation, which has increased her transportation costs and costs of living.

37. As a result of the driver's conduct trapping Ms. Castano in the dark bus, unable to escape an imminently dangerous and life-threatening situation, Ms. Castano sustained severe emotional disturbance and shock resulting in physical injury, including post-traumatic stress disorder ("PTSD"), anxiety, depression, headaches, sleep impairments and nightmares, panic attacks, shortness of breath, dizziness, nausea, cold sweats, and heart palpitations. Ms. Castano has continued to suffer from these mental and physical impairments since being trapped on the A and A bus, and they have severely impacted her life and will continue to do so for the foreseeable future.

38. As a result of the severe emotional disturbance and shock caused by the driver's conduct trapping Ms. Castano in the dark bus with an active shooter, Ms. Castano has panic attacks, nausea, cold sweats, dizziness, shortness of breath, and heart palpitations. These physical impairments prevent her from engaging in her regular activities of daily life. She can no longer use public transportation without risking experiencing these physical and mental symptoms, resulting in an increase in her transportation costs and costs of living.

39. As a result of the severe emotional disturbance and shock caused by the driver's conduct trapping Ms. Castano in the dark bus with an active shooter, Ms. Castano must receive ongoing treatment from a health care professional and will need such treatment for the foreseeable future.

## Vicarious Liability/Respondeat Superior

40. A and A is responsible for the conduct of the driver while the driver was acting within the scope of his duty for A and A.

41. A and A has a duty to ensure that all drivers of its buses are trained in vehicle and passenger safety, including evacuation in the event of an emergency.

42. At all relevant times, Charles Howard was an employee, agent and/or representative of A and A, a common carrier, and was acting within the scope of his employment and/or the ordinary course of his employer's business when he transported Ms. Lynch and Ms. Castano on the A and A bus on November 13, 2022.

43. At all relevant times, Charles Howard was an employee, agent and/or representative of A and A, a common carrier, and was acting within the scope of his employment and/or the ordinary course of his employer's business when he failed to provide A and A bus passengers with safety instructions, including the location of the bus exits and how to operate them.

44. At all relevant times, Charles Howard was an employee, agent and/or representative of A and A, a common carrier, and was acting within the scope of his employment and/or the ordinary course of his employer's business when he abandoned the A and A bus, imprisoning its passengers on the bus with a life-threatening danger.

45. As such, A and A is responsible for the acts, negligent and/or intentional, of Charles Howard as alleged above, and Charles Howard is held to the standard of care of A and A while acting within the scope of his employment.

46. A and A is further responsible for the negligent and/or intentional acts of its other employees, agents, and/or representatives who, during the course of their employment, caused or contributed to the acts and damages described above.

### **Defendants' Duty of Care to Plaintiffs**

47. A and A is a common carrier, transporting passengers for compensation. As such it has a duty to use the highest degree of practical care for the safety of its passengers, including Plaintiffs.

48.   A and A and its agent, the driver, have continued presence on and control over their vehicle.  They are in a special relationship with their passengers and have a high duty of care to keep their passengers safe.

49.   A and A is liable for the slightest negligence causing injury to its passengers that could have been foreseen and guarded against.  It is not necessary that the precise injury was anticipated.

50.   Once a dangerous situation arose, Defendants had a duty of care to Plaintiffs to ensure that passengers were aware of the locations of the exits and how to open them .

51.   Once a dangerous situation arose, Defendants had a duty to provide passengers with this emergency safety information  for disembarking the bus and failed to do so.

52. Defendants failed to provide Plaintiffs with any instructions on the location of the bus exits and how to operate them once a dangerous situation arose, preventing or delaying Plaintiffs from being able to evacuate the bus.

53. Once the shooting began, A and A and its driver had a duty to protect A and A passengers from an imminent probability of injury from a criminal act of a third party.

54.   Moreover, A and A and its driver had a duty not to cause any harm to A and A passengers.

55.   These duties continue until after the passenger has alighted from the bus and had a reasonable opportunity to reach a place of safety.

56.   Defendants had a duty to ensure that Plaintiffs were able to safely exit the bus once a situation of danger arose on the bus.

57.   Defendants breached their duty to protect passengers from the criminal acts of a third party when A and A's driver, having failed to provide any safety instructions to its passengers

for emergency evacuation, failed to take any steps to intervene, including turning on interior lights, opening the exits and leaving them open so that Plaintiffs could identify exits and flee to safety.

58. Defendants breached their duty to protect passengers from foreseeable or imminent harm when, upon hearing gunfire, the driver had an opportunity to open the door to enable students to flee the gunman, but instead exited the vehicle then closed the door behind him, trapping the passengers with the gunman.

59. Defendants not only failed to take any reasonable precautions to ensure Plaintiffs were safe and protect Plaintiffs from injury, A and A's driver directly and proximately caused Plaintiffs extreme emotional and physical trauma when he actively trapped Plaintiffs in the dark with an active shooter.

### Count I: Willful and Wanton Negligence

60. Plaintiffs re-allege and incorporate by reference paragraphs 1 to 68 above as if fully set forth herein.

61. A and A's driver acted with conscious disregard for Plaintiffs' rights and reckless disregard for the consequences of his actions.

62. A and A's driver was aware that there were student passengers on the A and A bus to whom he had provided no safety exit instructions.

63. A and A's driver had a heightened duty to take reasonable precautions for their safety as a common carrier.

64. Upon hearing gunfire, A and A's driver immediately abandoned the bus, closing the door and shutting his passengers in with the shooter behind him.

65. As a result of the driver's willful and wanton conduct, Plaintiffs were trapped on a bus with an active shooter with no discernible means of escape causing them to directly and proximately suffer extreme emotional and physical injury.

### Count II: False Imprisonment

66. Plaintiff re-alleges and incorporates by reference paragraphs 1-74 above as if set forth fully herein.

67. A and A's driver restrained Plaintiffs' physical liberty when he exited the vehicle and closed the door behind him without providing Plaintiffs with any instructions on how to open the bus doors, effectively imprisoning them on the bus.

68. Plaintiffs were not made aware of any exits other than the one exit/entrance which they used to get on the bus and could not, in the dark, discern alternative exits.

69. Passengers began yelling that they couldn't get out and struggling to open the door but did not know how it operated. During this time, the passengers, including Plaintiffs, were effectively imprisoned in the vehicle.

70. During this time, Plaintiffs believed that they had no means to escape the bus.

71. A and A's driver had no justification for restraining Plaintiffs' physical liberty.

72. As a direct and proximate result of A and A's driver falsely imprisoning Plaintiffs on a bus, Plaintiffs suffered extreme emotional and physical trauma.

### Count III: Intentional Infliction of Emotional Distress

73. Plaintiffs re-allege and incorporate by reference paragraphs 1-81 above as if set forth fully herein.

74. A and A's driver not only failed to take reasonable safety precautions to protect Plaintiffs from danger, which he was under a duty to do, he took actions that effectively trapped Plaintiffs and their fellow students on the A and A bus with an active shooter in the dark.

75. A and A's driver's conduct was reckless, in deliberate disregard for the right of the Plaintiffs, and any reasonable person would know that such conduct created an unreasonable risk of harm to others.

76. A and A's driver's conduct, leaving students trapped in a bus with an active shooter, was so outrageous in character that it was beyond all bounds of decency and intolerable in a civilized community.

77. As a result of being trapped in a situation of grave danger, Plaintiffs suffered extreme shock and fright while they heard continued gunfire and the screams of other passengers. Unable to escape the vehicle and flee to safety, Plaintiffs were forced to simply crouch and wait to be shot.

78. Plaintiffs suffered extreme emotional disturbance and distress with resulting physical impairments as a result of being trapped in the A and A bus with an active shooter, unable to discern a means of escape from the life-threatening situation in which they were confined. These impairments have forever altered their lives.

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter judgement in their favor and award them compensatory and punitive damages, attorneys' fees and costs, pre-judgment and post-judgment interest and costs of court, as well as any other relief this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury in this action of all issues so triable.

Date: July 21, 2025

Respectfully submitted,

VASSEGHI LAW GROUP

*/s/ Roya Vasseghi*
Roya Vasseghi, Esq. (VSB No. 85122)
Courtney Toomath-West (*pro hac vice*)
9663-D Main Street
Fairfax, VA 22031
(703) 215-9358
roya@vasseghilaw.com
courtney@vasseghilaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on this 21st day of July, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

*/s/ Roya Vasseghi*
Roya Vasseghi